## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

MCH SWISS EXHIBITION (BASEL) LTD., a
Switzerland corporation and ART BASEL U.S.
CORP., a Florida corporation,

     Plaintiffs,

v.

ADIDAS AMERICA, INC., a Delaware
corporation and ADIDAS AG, a Germany
corporation

     Defendants.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, MCH SWISS EXHIBITION (BASEL) LTD. ("MCH") and ART BASEL U.S.

CORP. ("Art Basel U.S.") (together, "Plaintiffs" or "the Art Basel Entities"), by and through

undersigned counsel, sue Defendants, ADIDAS AMERICA, INC. ("Adidas America") and

ADIDAS AG (together, "Defendants" or "Adidas"), and state:

### NATURE OF THE ACTION

1.    This action arises from Defendants' willful distribution of at least 1,000 pairs of

sneakers (the "Infringing Sneakers") bearing an unauthorized reproduction of Plaintiffs'

registered and incontestable ART BASEL® trademark as shown below:



{}



2.      Defendants' unauthorized use of the ART BASEL® trademark on the Infringing Sneakers during the annual art fair event organized by Plaintiffs in Miami Beach constitutes trademark infringement under the Lanham Act (Count I), false association with the Plaintiffs and false designation of origin under Section 43(a)(1)(A) of the Lanham Act (Count II), dilution under Section 43(a)(1)(A) of the Lanham Act, (Count III), Florida common law trademark infringement (Count IV), dilution of Plaintiff's trademark rights under Sec. 495.151, Florida Statutes (Count V), Deceptive and Unfair Trade Practices (Count VI) and Unjust Enrichment (Count VII). Defendants' infringement has diminished and continues to diminish the value of important licensing partnerships held by Plaintiffs. Defendants' infringement has diminished and continues to diminish Plaintiffs' incontestable ART BASEL® trademark as well.

## PARTIES

3.      Plaintiff MCH is a corporation organized under laws of Switzerland.

4.      Plaintiff Art Basel U.S. is a corporation organized under the laws of the State of Florida, having its principal place of business at 1111 Brickell Avenue Ste. 1700 (FT) Miami, Florida, 33131. Art Basel U.S. is a wholly owned subsidiary of MCH. Art Basel U.S. is the exclusive U.S. trademark licensee of MCH.

5.      Defendant Adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Posfach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

6.      Defendant Adidas America is a corporation organized under the laws of Delaware, with its principal place of business at 5055 North Greeley Avenue, Portland, OR, 97217. Adidas America directs all U.S.-based operations on behalf of Adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of merchandise labeled with the mark Adidas.

7.      Upon information and belief, Adidas America is a wholly owned subsidiary of Adidas AG.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiffs' related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367 because they are so related to the Lanham Act claims that they form part of the same case or controversy.

9.      Defendants are subject to the personal jurisdiction of this Court pursuant to 28 U.S.C. § 1391 and § 48.193, Fla. Stat., because Defendants conduct substantial and not isolated activity within the State of Florida, including, but not limited to, by regularly transacting business, soliciting business, and deriving revenue from the sale of goods to individuals in the State of Florida and in this District. Defendants have engaged in acts or omissions within this State causing injury and manufactured or distributed products used or consumed within this State

in the ordinary course of trade, has committed tortious acts within this State, or has otherwise made contacts with this State sufficient to permit the exercise of personal jurisdiction.

10.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

### The Art Basel Mark and Art Basel

11.   Since 1970, MCH and its predecessors, through its subsidiaries, have been organizing the world's premier modern and contemporary art fair expositions.

12.   The ART BASEL name and mark has been used by MCH internationally since at least as early as 1999 in connection with art fair expositions around the world and related goods and services. Today, MCH's internationally recognized events are held annually in Basel, Switzerland, Hong Kong, China, and Miami Beach, Florida.

13.   Art Basel U.S. currently organizes a world famous art fair exhibition that has been and continues to be held in Miami Beach, Florida ("Art Basel"). Art Basel began to be promoted in 2001, was launched in 2002 and has been held in Miami Beach every year since then.

14.   In recent years, Art Basel has featured over 250 galleries from North America, Latin America, Europe, Asia and Africa, showcasing Modern and contemporary artwork by over 4,000 artists.

15.   Art Basel for 2016 was held December 1-4, 2016 at the Miami Beach Convention Center.

16.   Art Basel in 2016 drew approximately 77,000 attendees.

17.   To protect its valuable trademark rights, Plaintiff MCH obtained and now holds U.S. Trademark Registration No. 4,030,474 ("the '474 Registration") for the ART BASEL

standard character word mark ("the ART BASEL mark"), covering services for the organization and management of trade fairs, trade shows and events for commercial and advertising purposes, the organization of exhibitions for cultural and education purposes, and organizing, arranging and conducting exhibitions for entertainment purposes. (*See* the '474 Registration attached hereto as Exhibit 1.)  The '474 Registration is incontestable.

18.     In addition, MCH has also obtained U.S. and international registrations for ART BASEL MIAMI BEACH, ART BASEL HONG KONG and ART BASEL ASIA for similar services.

19.     Plaintiff Art Basel U.S. is the exclusive licensee of MCH of all rights in and to the ART BASEL mark in the United States.

20.     The ART BASEL mark has been used by MCH, through its subsidiaries, internationally since as early as 1999 in connection with art fair expositions and related goods and services.

21.     Since as early as 2002, MCH, through its U.S. subsidiaries, has used ART BASEL in commerce in connection with Art Basel and the sale and distribution of related goods such as books and handbags, including the ones depicted below:

   

22.     Plaintiffs continue to use the ART BASEL mark today extensively and exclusively to identify such services and related goods.

23.     The ART BASEL mark represents one of Plaintiffs' most valuable and important corporate assets.

24.     Plaintiffs routinely permit its show partners to use the ART BASEL mark on an exclusive basis for valuable consideration. Plaintiffs' have recently licensed the use of the ART BASEL mark to internationally well-known entities such as UBS financial services, NetJets fractional airplane ownership company, BMW, Audemar Piguet watches, and Davidoff cigars.

25.     Art Basel has received unsolicited media coverage from around the United States, including from publications such as Forbes Magazine, the New York Times and Cosmopolitan, which has garnered significant and widespread recognition of Art Basel, Plaintiffs and the ART BASEL mark. The New York Times alone has featured Art Basel in dozens of articles since as early as 2002.

26.     Plaintiffs have extensively and continuously used and promoted the ART BASEL mark in connection with its art fairs and continue to do so. In recent years, annual sales of art at Art Basel are estimated to have totaled in the hundreds of millions of dollars within the United States. In fact, the estimated value of the art brought to Art Basel in 2016 is over $3 billion.

27.     Plaintiffs have spent millions of dollars in the United States, including in the State of Florida and this District, and worldwide, on the promotion and advertising of the ART BASEL mark including public relations campaigns and social media promotions and app development. In addition, Plaintiffs use the ART BASEL mark to maintain a worldwide network of representatives that provide personal services to art enthusiasts and collectors.

28.     Plaintiffs guard the use of the ART BASEL mark to maintain the value of the exclusive partnerships it forms for each Art Basel art fair and the ART BASEL mark itself.

29.     Plaintiffs have carefully monitored and policed the use of the ART BASEL mark and has never assigned or licensed it to any of the Defendants.

30.     As a result of Plaintiffs' extensive use and promotion of the ART BASEL mark, MCH has built up and now owns extremely valuable goodwill that is symbolized by the mark.

31.     Plaintiffs can demonstrate the fame of the ART BASEL mark through its longstanding and exclusive use of the ART BASEL mark, the size and prominence of Plaintiffs' art fairs, the success of Plaintiffs' promotional efforts as evidenced through its numerous publications and website, and the media coverage of Plaintiffs' art fairs.

32.     Because of the long and continuous use of the ART BASEL mark in commerce, including through the advertising and promotion of services and goods through the ART BASEL mark, consumers throughout the United States have come to recognize the ART BASEL mark as a symbol of the services and goods offered by Plaintiffs.

33.     Prominent use of the ART BASEL mark in connection with its activities and products has further enhanced the ART BASEL mark's recognition and fame so that the ART BASEL mark is well-known and qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

34.     The ART BASEL mark has become distinctive, having achieved a high degree of consumer recognition.

35.     The ART BASEL mark has achieved international fame and extensive international public recognition.

36.     The ART BASEL mark is inherently distinctive and has achieved secondary meaning as an identifier of the excellent quality Art Basel art fair as a result of Plaintiffs' advertisement, promotion, and provision of services thereunder.

**Defendants' Infringing Conduct**

37.     Upon information and belief, Adidas possessed specific knowledge regarding Plaintiffs and the ART BASEL mark since at least as early as 2007, with the establishment of an Adidas Originals boutique at 226 8th St, Miami Beach, FL 33139, approximately one mile from an established venue of Art Basel.

38.     Upon information and belief, in 2016, Adidas decided to launch a new version of its EQT sneaker, one of Adidas' more popular sneakers in the early 1990s.

39.     In or around 2016, without receiving consent from Plaintiffs, or even requesting such consent, Adidas AG designed the Infringing Sneakers improperly bearing the ART BASEL mark to promote its new version of the EQT sneaker.

40.     Upon information and belief, on or about November 15, 2016, Adidas manufactured the Infringing Sneakers and distributed the infringing sneakers in the United States.

41.     The ART BASEL mark was prominently placed on the tongue of the Infringing Sneaker in equal size to Adidas's marks immediately below the Adidas marks as shown below:



42.     Upon information and belief, some, if not all, of the Infringing Sneakers had hang

tags identifying the product name as **EQT SUPPORT ADV ART BASEL**, as shown below**:**



43.     Upon information and belief, the designation of the "HZO" prefix on the hang tag under "Category" indicates that the shoes were designed at and/or distributed from the Adidas AG headquarters in Herzogenaurach, Germany.

44.     Upon information and belief, some, if not all, of the infringing sneakers were distributed or sold in boxes labelled **EQT SUPPORT ADV ART BASEL**, as shown below**:**



45.     The box also bears the "HZO" designation, which, upon information and belief, indicates that the shoes were designed at and/or distributed from the Adidas AG headquarters in Herzogenaurach, Germany.

46.     The placement of the ART BASEL mark on the Infringing Sneakers, hang tags and boxes, which each also bear Defendants' marks, deliberately misrepresents an association, show partnership, sponsorship or other affiliation between Plaintiffs and Adidas and misrepresents the origin of the Infringing Sneakers.

47.     Adidas knew or should have known that the market would consider that an affiliation exists between Adidas and Plaintiffs, as they currently use a similar trademark scheme using the trademarks of others in conjunction with their marks to indicate the existence of such a relationship, such as the marks it placed on the official match balls of the 2014 World Cup and the 2016 UEFA European Championship to indicate Adidas' sponsorship, each shown below:

 

48.     Adidas' infringement of the ART BASEL marks affects interstate and international commerce.

49.     Upon information and belief, Defendants are particularly cognizant of the value of the Internet in marketing sneakers, and the Defendants have expended and continue to expend significant resources in Internet marketing.

50.     Upon information and belief, to promote its sneakers, Adidas has its own social media outlets including @adidasOriginals on Twitter.

51.     Upon information and belief, Adidas used its own internet marketing channels including the Twitter feed @adidasOriginals to promote events in Miami and Miami Beach during which Adidas distributed the infringing sneakers.

52.     Upon information and belief, on or before the weekend of Art Basel, Adidas arranged for journalists from around the world to travel to Miami Beach to promote and report on the distribution of the Infringing Sneakers.

53.     Upon information and belief, to further promote the Infringing Sneakers, Adidas provided early announcements to third party journalists of the events in Miami and Miami Beach during which Adidas distributed the infringing sneakers.  Upon information and belief, Adidas additionally provided pairs of the Infringing Sneakers to journalists before the events.

54.     Upon information and belief, at approximately 1:00 PM, on November 30, 2016, Adidas, through its @adidasOriginals Twitter feed, tweeted that an exclusive event was taking place at 4001 NE 2nd Avenue, Miami, FL 33137 at approximately 5:15 PM ("the 2nd Avenue Event").

55.     Upon information and belief, at the 2nd Avenue Event, long lines of people were already in place at the time, and Adidas provided a choreographed dance event in a public square as shown in the image below:



56.     Upon information and belief, at the 2nd Avenue Event, Adidas gave away at least 500 pairs of the Infringing Sneakers to the public and distributed additional Infringing Sneakers to the individuals who performed the choreographed dance.

57.   Upon information and belief, at approximately 6:00 PM, on November 30, 2016, Adidas, through its @adidasOriginals Twitter feed, tweeted that another Infringing Sneaker giveaway was taking place at 2216 Park Avenue, Miami Beach, FL at 7:00 PM ("the Miami Beach Event").

58.   Upon information and belief, at the Miami Beach Event, another well-attended choreographed dance event took place, as shown in the images below:





59.     Upon information and belief, Adidas utilizes similar events worldwide, such as a run organized for a small group of identically dressed people at a public forum in Greece in February of 2016, as depicted below:



60.     Upon information and belief, at the Miami Beach event, Adidas gave away at least 500 pairs of Infringing Sneakers to the public at the Miami Beach Event.

61.     Upon information and belief, additional infringing sneakers have been given to one or more people who followed the @adidasOriginals Twitter feed after November 30, 2016.

62.     Upon information and belief, Adidas knew or should have known that the images of the Infringing Sneakers would persist on third party sneaker enthusiast websites, including those belonging to journalists specifically contacted by Adidas.

63.     Upon information and belief, the infringing sneakers continue to misrepresent a relationship between the sneakers and Plaintiffs through publicly accessible images of the sneakers including, but not limited to, those currently found at the following sneaker-focused websites:

    a.  http://www.sneakerfiles.com/adidas-eqt-support-adv-art-basel-miami/

    b.  http://www.nicekicks.com/adidas-originals-made-limited-edition-art-basel-colorway-eqt-adv-91-16/

    c.   https://sneakerbardetroit.com/adidas-eqt-support-adv-art-basel-miami/

    d.   https://hypebeast.com/2016/11/adidas-originals-eqt-support-adv-primeknit-reflective-art-basel

64.    Upon information and belief, Adidas, aware of the persistent website presence of the infringing sneakers and the secondary market for limited edition sneakers, knew the infringing sneakers would quickly be placed on internet selling platforms such as eBay.

65.    Adidas knew or should have known that the presence of images of the ART BASEL mark on the Infringing Sneakers posted on eBay advertisements would continue confusing and misleading of the public as to an association between Plaintiffs and Adidas.

66.    The Infringing Sneakers have been, and continue to be, offered for sale and sold on eBay.

67.    Upon information and belief, Adidas also knew or should have known that images of the limited edition infringing sneakers would also be placed on YouTube videos for sellers and aficionados of limited edition sneakers. The existence and use of these videos continues to mislead and confuse the public as to an association between Plaintiffs and Defendants.

68.    Upon the release of the infringing sneakers, @adidas Twitter followers began to comment about them, including sneaker blogger Complex Sneakers that referred to the infringing sneaker as "the 'Art Basel' EQT":



69.     Adidas has enjoyed the benefits of an exclusive license of the ART BASEL mark without paying for or obtaining a license from Plaintiffs and, therefore, has been unjustly enriched through its unauthorized infringement of the ART BASEL mark.

70.     Plaintiffs provided written notice to Adidas of its infringing activities on December 4, 2016.

71.      In blatant disregard of Plaintiffs' rights, Defendants have promoted, advertised, distributed, sold, and/or offered for sale the Infringing Sneakers in interstate commerce bearing the ART BASEL mark, and Plaintiffs believe that Defendants may continue to do so.

72.     Plaintiffs are suffering irreparable and indivisible injury and harm as a result of Defendants' unauthorized and wrongful use of the ART BASEL mark. If Defendants' infringing and unfairly competitive activities are not permanently enjoined, Plaintiffs and the consuming public will continue to be harmed.

73.     The injury and harm sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of the Infringing Sneakers.

**COUNT I**
**INFRINGEMENT OF FEDERALLY REGISTERED**
**ART BASEL MARK   (15 U.S.C. § 1114)**

74.     Plaintiffs incorporate by reference Paragraphs 1 through 73 above as if fully set forth herein.

75.     Defendants' use of the ART BASEL mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' goods.

76.     Defendants' use of the ART BASEL mark is without Plaintiffs' permission or authority and has been willful and with full knowledge of Plaintiffs' rights.

77.     Defendants' conduct as described above constitutes infringement of the federally registered ART BASEL mark in violation of the Lanham Act, 15 § U.S.C. 1114.

78.     Defendants' intentional use of an identical mark and acts of infringement have caused and are causing great and irreparable injury and damage to Plaintiffs, including with respect to its trademark rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

79.     Plaintiffs, therefore, are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

**COUNT II**
**FEDERAL FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(a)(1)(A))**

80.    Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

81.    Defendants' conduct as described above constitutes false association, false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 § U.S.C. 1125(a)(1)(A).

82.    Defendants' use of the ART BASEL mark is without Plaintiffs' permission or authority and has been willful and with full knowledge of Plaintiffs' rights.

83.    Defendants' intentional acts of false association, false designation of origin and unfair competition have caused and are causing great and irreparable injury and damage to Plaintiffs' rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

84.    Plaintiffs, therefore, are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

**COUNT III**
**FEDERAL DILUTION**
**15. U.S.C. § 1125(a)(1)(C))**

85.    Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

86.    The duration, extent, and geographic reach of advertising and publicity of the ART BASEL mark, both advertised and publicized by the owner and third parties, as well as the amount, volume, and geographic extent of sales of goods and services offered under the ART

BASEL mark, and the U.S. and international recognition of Plaintiffs' ART BASEL mark evidence that the ART BASEL mark is "famous" within the meaning of the Lanham Act.

87.    Defendants' use of the ART BASEL mark has diluted the ART BASEL mark.

88.    Defendants' continued use of the ART BASEL mark is likely to dilute the ART BASEL mark.

89.    Upon information and belief, Defendants adopted and used the ART BASEL mark long after the ART BASEL mark became famous.

90.    The Defendants' use was commercial and in commerce.

91.    Defendants' use of the ART BASEL mark was and is without Plaintiffs' permission or authority.

92.    Given the notices provided to Defendants by Plaintiffs, such activities were, are, and remain, with full knowledge of Plaintiffs' rights, willful and intentional.

93.    These willful and intentional acts have caused and are causing great and irreparable injury and damage to Plaintiffs' rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

94.    Plaintiffs, therefore, are entitled to injunctive relief, defendant's profits, damages, destruction of any remaining infringing goods and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

### COUNT IV
### COMMON LAW TRADEMARK INFRINGEMENT

95.    Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

96.     Plaintiffs have continuously advertised, promoted, offered for sale, sold and distributed its services and goods in the State of Florida under the ART BASEL mark.

97.     Defendants' use of the ART BASEL mark as more fully described above violates the common law of the State of Florida, in that it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' goods.

98.     Defendants' use of the ART BASEL mark is without Plaintiffs' permission or authority and has been with full knowledge of Plaintiffs' rights.

99.     Defendants' intentional use of an identical mark and acts of infringement have caused and are causing great and irreparable injury and damage to Plaintiffs, including with respect to its trademark rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

**COUNT V**
**FLORIDA TRADEMARK DILUTION**
**Florida Statutes § 495.151**

100.    Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73  of this Complaint as if fully set forth herein.

101.    The ART BASEL mark is famous in Florida.

102.    Defendants have used and continue to use the ART BASEL mark.

103.    Defendants' past and continuing use of the ART BASEL mark is likely to cause dilution of the distinctive quality of the famous mark.

104.    Defendants' use of the ART BASEL mark is causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the

distinctiveness and value of Plaintiffs' famous and distinctive ART BASEL mark in violation of Florida Statutes Section § 495.151. Plaintiffs, therefore, are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## Florida Statutes §§ 501.201 – 501.213

105.   Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

106.   Defendants' conduct as described herein constitutes deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act, including the use of the ART BASEL mark to unfairly deceive consumers into believing that Defendants are partnered with, associated with or licensed by Plaintiffs.

107.   Defendants' infringement caused a detriment to consumers, misleading them to believe there is a partnership, association or valid license between Defendants and the Plaintiffs.

108.   Defendants' conduct unfairly diminishes the value of the ART BASEL mark and partnerships incorporating licenses for the ART BASEL mark.

109.   Plaintiffs been damaged as a direct and proximate result of Defendants' deceptive and unfair trade practices as described above.

## COUNT VII
## COMMON LAW UNJUST ENRICHMENT

110.   Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

111.   Defendants received a benefit in the form of an unpaid license of the ART BASEL mark from Plaintiffs, and Defendants had knowledge thereof.

112.    Defendants accepted or retained the benefit conferred.

113.    It would be inequitable for the Defendants to retain the benefit without paying fair value.

114.    Defendants' conduct as described herein constitutes unjust enrichment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief and judgment:

1.    Entry of a permanent injunction enjoining Defendants, their officers, directors, agents, representatives, successors and assigns, licensees, employees, consultants, affiliates, attorneys and all persons in privity or acting in concert or in participation with any of them, from using the ART BASEL mark, and any variations thereof, in any manner, form, or medium likely to cause confusion, mistake, and/or deception as to the origin, affiliation, connection, approval, or sponsorship of Defendants' goods and services.

2.    An order directing Defendants to file with this Court and serve upon Plaintiffs within 30 days, a report in writing under oath setting forth in detail the manner in which Defendants have complied with the injunction;

3.    An order pursuant to Sections 36 of the Lanham Act, 15 U.S.C. §1118, requiring Defendants to surrender for destruction all shoes, parts of shoes, labels, tags, boxes, digital files, images, prints, packages, wrappers, receptacles, advertisements and other materials bearing or imitating the ART BASEL mark;

4.    An order requiring Defendants to recall from distribution and surrender for destruction all products, order forms, price lists, labels, advertisements, brochures, catalogs, packaging materials and other materials incorporating or imitating the

ART BASEL mark, and to remove all unauthorized uses of the ART BASEL mark from each website owned or controlled by Defendants;

5.     An order requiring Defendants to publish or otherwise distribute corrective advertising, including, but not limited to, advertising in any and all channels used to promote the 2nd Avenue Event, the Miami Beach Event and the Infringing Sneakers, to clear public misunderstanding caused by the Defendants;

6.     An order directing Defendants to account to Plaintiffs for any and all profits obtained by Defendants by reason of their wrongful conduct complained of herein, and awarding Plaintiffs the full amount of Defendants' profits pursuant to 15 U.S.C. § 1117(a) and all other applicable law;

7.     An award of compensatory damages, including, but not limited to, license fees, a reasonable royalty, statutory damages, treble damages, costs, and attorneys' fees incurred in connection with this action pursuant to 15 U.S.C. § 1117(a) and all other applicable law.

8.     An award to Plaintiffs for three times the amount of all damages sustained by Plaintiffs by reason of Defendants' unlawful conduct, including lost sales and business opportunities, pursuant to 15 U.S.C. § 1117(a) and all other applicable law; and

9.     Such other relief as this Court deems proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: May 30, 2017                    Respectfully submitted,


By:      s/ Joseph R. Englander
         Joseph R. Englander
         Florida Bar No. 935565
         Albert Alvarez
         Florida Bar No. 106859
         PERETZ CHESAL & HERRMANN, PL
         2 S. Biscayne Blvd., Suite 3700
         Miami, Florida 33131
         Tel: 305-341-3000
         Fax: 305-371-6807
         jenglander@pch-iplaw.com
         aalvarez@pch-iplaw.com

         *Counsel for Plaintiffs*